TARA K. MCGRATH
United States Attorney
Nicholas W. Pilchak
California Bar No. 331711
Assistant U.S. Attorney
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-9709
Email: nicholas.pilchak@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: 23-CR-1700-AHG |
|---|---|
| Plaintiff, | Date: October 19, 2023<br>Time: 10:00 a.m. |
| v. | |
| TIEN TAN VO, | The Honorable Allison H. Goddard |
| Defendant. | **UNITED STATES' SENTENCING MEMORANDUM** |

**TO: Jeremy Warren & Michael Aguirre, Attorneys for Defendant TIEN TAN VO**

The UNITED STATES OF AMERICA, by and through its counsel, TARA K. MCGRATH, United States Attorney, and Nicholas W. Pilchak, Assistant U.S. Attorney, hereby files its Sentencing Memorandum.

## I.

## INTRODUCTION

Over almost four years, Dr. Tien Vo treated well over 100 patients with foreign, unapproved cosmetic drugs and devices: specifically, botulinum toxin and lip fillers smuggled into the United States from Mexico by his accomplice. While this conduct was undeniably serious, given the other equities discussed below, the Court should impose the jointly recommended sentence: three years of probation with community service, plus a $201,534 fine and a $100,767 forfeiture judgment.

The parties also jointly request the Court to set a subsequent restitution hearing for finalizing a restitution order to identifiable victims at a later date.

## II.
## STATEMENT OF THE CASE

On August 24, 2023, Tien Tan Vo waived indictment and pleaded guilty to a criminal information charging him with two misdemeanors: accessory after the fact to entry of goods by means of false statement, in violation of Title 18, United States Code, Sections 542 and 3, and receipt in interstate commerce of misbranded drugs and devices, in violation of Title 21, United States Code, Sections 331(c) and 333(a)(1).[1]

## III.
## STATEMENT OF FACTS

**A.   Background**

This investigation was begun by Homeland Security Investigations after they noticed Flor Sileing Cham, charged in 23-cr-1926-JLS, posting dozens of boxes of "Xeomeen" for sale on an online marketplace. "Xeomeen" is a botulinum toxin product that is not authorized by the FDA for use in the United States, although a related product from the same manufacturer (trade name "Xeomin") is approve for such use.

An HSI undercover agent bought several rounds of unapproved drugs and devices from Ms. Cham. At a meeting, Cham told the undercover agent that she regularly supplied Dr. Tien Vo with his botulinum toxin.

**B.   Dr. Vo's Purchase History**

Facebook communications and financial records establish that Cham sold Xeomeen to Dr. Vo beginning in November 2016. The messages demonstrate that Dr. Vo knew that Cham was bringing the product in from Mexico. Cham also rapidly began selling Dr. Vo a foreign unapproved product called Probcel—a Brazilian lip filler

---

[1]   This memorandum references "devices" because, under the Food, Drug and Cosmetic Act, lip fillers are most accurately classified as devices and not drugs.

that is also not authorized for use in the United States. Between November 2016 and February 2020, Cham sold Vo tens of thousands of dollars of Xeomeen and Probcel.

Dr. Vo also sourced Xeomeen from another supplier. In his written communications, that supplier informed Vo that the product was "from the Mexico distributor" and that it was "getting more difficult because of the new re[s]trictions." The supplier added that "we will cross 5 [vials] a day" because it "makes it easy for delivery for distributor." Weeks later, the supplier texted Vo: "I got a call from the Xeomin rep. He has it with the English labels already. In case you need some more." Vo replied, "Ok I will let you know. I just got 20 bottles in english…"

In total, Dr. Vo purchased $48,530 of cosmetic drugs and devices from Cham and the other supplier between November 2016 and February 2020—not including the final shipment of Xeomeen, which was seized on October 5, 2020, as discussed below. In his plea agreement, Vo admitted that he obtained $100,767.00 of gross receipts for use of those unapproved drugs and devices during that period.

### C. Undercover Consult With Dr. Vo

An undercover HSI agent visited Dr. Vo's practice for a cosmetic consultation on September 30, 2020. When the agent asked what "Botox" product he used for his cosmetic procedures, Vo cleared his throat, hedged a bit, and ultimately said they use the "generic name" product. He did not disclose that the product was unapproved or sourced from Mexico. Brochures provided to the undercover agent during the agent's visit described the treatment offered as "Xeomin Botox® Injections."

### D. Warrant Search & Statement

Agents conducted a warrant search of Dr. Vo's El Centro and Calexico clinics on October 5, 2020, in connection with a final delivery of 10 boxes of Xeomeen that Vo had ordered from Cham. During the search agents discovered boxes of Xeomeen and Probcel in Vo's clinic. Agents searching Dr. Vo's Calexico clinic also recovered blank consent forms for "Botox®." The forms explicitly noted that "BOTOX has been FDA

approved to treat certain conditions," including cosmetic conditions such as crow's feet. No FDA-approved cosmetic drugs were located during the search.

In a post-*Miranda* interview,[2] Dr. Vo admitted that he used cosmetic drugs from Mexico and not FDA-approved drugs from the United States. He explained that part of his rationale for doing so was to save his patients money. However, Dr. Vo also said that he told "most of" his patients that he was using Mexican products during their procedures, which was inconsistent with patient interviews later conducted by agents.

## IV.
## MEMORANDUM OF POINTS AND AUTHORITIES

**A.    Guidelines Calculations.**

   *1.    Introduction*

The parties have agreed to jointly recommend the following guidelines calculations:

| | |
|---|---|
| Base offense level [USSG § 2B1.1(a)(2)] | 6 |
| Loss over $40,000 [USSG § 2B1.1(b)(1)(D)] | +6 |
| More than 10 victims [USSG § 2B1.1(b)(2)(A)(i)] | +2 |
| Abuse of trust and special skill [USSG § 3B1.3] | +2 |
| Acceptance of responsibility [USSG § 3E1.1] | -3 |
| Combination of circumstances [USSG § 5K2.0] | -2 |

The parties have agreed to jointly recommend the downward departure for combination of circumstances based on Dr. Vo's disposition of the case and waiver of appeal. Additionally, the United States intends to recommend at sentencing a further variance equivalent to two levels to reflect the imminent amendment for "zero-point" offenders, in exchange for confirmation from defense counsel that Vo waives his right to seek retroactive application of that provision after it goes into effect.

---

[2]    Dr. Vo was not placed under arrest but was given *Miranda* warnings out of an abundance of caution.

Based on the parties' plea agreement, and for the reasons set out below, the Court should follow these recommended guidelines.  Based on the equities presented by Vo and his overall resolution of the case, the United States submits that a sentence of probation, coupled with the jointly recommended and significant financial penalties, is a sufficient sentence in this case.

### 2. *The loss amount is $48,530.*

The Court should calculate the guidelines at sentencing with reference to USSG § 2B1.1, as all parties and Probation all recommend.  The sentencing guidelines for violations of the Food, Drug and Cosmetic Act (i.e., Count 2) are contained in USSG § 2N2.1, which provides for a base offense level 6, with no applicable adjustments.  In certain cases, however, the guidelines direct the application of Section 2B1.1, where the sentence is determined based on the loss amount. *See* USSG § 2N2.1(c)(1); USSG § 2B1.1 Application Note 3(F)(v) ("In a case involving a scheme in which . . . goods were falsely represented as approved by a governmental regulatory agency . . . loss shall include the amount paid for the . . . goods transferred, rendered, or misrepresented, with no credit provided for the value of those items or services."); *see also United States v. Munoz*, 430 F.3d 1357, 1373 (11th Cir. 2005); USSG § 2B1.1 cmt. n. 3(B).

Under Section 2B1.1., the parties have agreed to jointly recommend loss over $40,000.  This is based on Dr. Vo's payment of $48,530 for the unapproved cosmetic drugs and devices he used in his practice.[3]

---

[3]  As to Count 1, the same guidelines would ultimately apply, although for different reasons.  The sentencing guidelines for violations of Section 545 are contained in USSG § 2T3.1.  The base offense level is computed with reference to the duty avoided while smuggling in the property.  *See* USSG § 2T3.1(a).  Applying a tax loss model to this conduct is virtually impossible, however, since the subject merchandise (Xeomeen or unapproved lip fillers) is not cleared for commercial or bulk importation, and there is no assessed duty for personal-use quantity importation of these products.  On the other hand, since the products smuggled were contraband—prohibited foreign pharmaceuticals—an alternative measure of the duty evaded should apply, such as the increase in value of the merchandise smuggled.  *See, e.g., United States v. Montano*, 250 F.3d 709, 713 n.5 (9th Cir. 2001); *see also* USSG § 2T3.1 cmt. n.2.  Some authority

### 3. *Numerous victims.*

Dr. Vo's cosmetic practice provided services to well over 100 patients during the indicated period; the complete list is estimated at 178 individuals. By Vo's own admission, each was treated with unapproved foreign drugs and devices. Accordingly, the parties jointly recommend the enhancement for more than 10 victims.

### 4. *Role.*

Concurring with Probation, the United States recommends no role adjustment.

### 5. *Abuse of trust and special skill.*

The parties jointly recommend an adjustment for abuse of trust and use of a special skill, together with Probation. The United States believes both apply to Dr. Vo's conduct in this case. Indeed, doctors are one of the prototypical examples of a "special skill" warranting the adjustment. *See* USSG 3B1.3 n. 4. The United States also notes that imposition of a "special skill" adjustment would block the application of an aggravating role adjustment, per the guidelines. *See* USSG § 3B1.3.

### 6. *Acceptance of responsibility.*

By pleading guilty, Dr. Vo has demonstrated acceptance of responsibility for his conduct and should receive a three-point reduction.

## B. Sentencing Factors.

### 1. *Aggravation.*

Dr. Vo treated well over 100 patients with unapproved drugs from Mexico. It does not appear that he told at least a significant fraction of them about the drugs he was using. In fact, his clinics' literature and advertising—and his own statements in a

---

suggests that the value of such pharmaceutical products doubles once they are imported, *see Montano*, 250 F.3d at 709, which would create a proxy tax loss of a little over $40,000.00—i.e., the wholesale value of the smuggled merchandise, which is a base offense level 14 on the tax table. This is equivalent to the 2B1.1 calculations, before the abuse of trust and use of special skill enhancement.

recorded undercover consultation—indicate that he claimed or suggested the opposite: that his practice used approved, legitimate drugs in its procedures.

### 2. *Mitigation.*

At the same time, his cosmetic practice was a very small fraction—likely less than 2%, and perhaps substantially less—of Dr. Vo's overall medical practice. It does not appear that he used unapproved drugs or devices in the other services offered at his clinic. Moreover, many doctors who use unapproved drugs do it to cut costs, charging their customers market rate and saving on their own supplies while pocketing the (substantial) difference. While he admitted to profiting from the practice, Dr. Vo appears to have largely passed the savings on to his customers and charged less than the market rate for approved cosmetic drugs. That said, there was clearly a business purpose for this conduct as well, since it allowed Dr. Vo to undercut the market and likely bring a modest number of additional patients to his practice.[4]

### 3. *Conclusion.*

Weighing the factors together, in light of the guidelines, it does not appear that a custodial sentence is necessary in this case, for several reasons. First, Dr. Vo operates a busy medical practice in a severely underserved area, and (as noted) the bulk of his practice was unaffected by this offense conduct. Second, sentencing Dr. Vo to prison would have significant collateral consequences on his ability to practice medicine. While those consequences are often warranted for offenders whose criminal conduct permeated their entire medical practice, the United States submits that guaranteeing those consequences to Vo's practice here is unwarranted, since most of it was not associated with the crimes of conviction. Third, Dr. Vo has agreed to a rather speedy

---

[4] The United States concurs with Dr. Vo's factual contention in footnote 2 of his sentencing memorandum. ECF 12 at 5. That is, there is no evidence that Dr. Vo billed Medicare or Medi-Cal for the cosmetic services at issue in this case.

resolution of his case, and to voluntarily pay significant financial penalties (relative to the scope of the crime) as outlined below.

Taking these factors together, the United States recommends a sentence of three years of probation, coupled with 100 hours of community service.

## C.     Forfeiture.

In his plea agreement, Dr. Vo agreed that his gross proceeds from his offense conduct were $100,767.00. He has agreed to forfeit this amount via a money judgment. The United States tendered a proposed forfeiture order to chambers, to which the defense has assented, on October 17, 2023.

## C.     Fine.

In his plea agreement, the parties agreed to jointly recommend a statutory maximum fine of $201,534, which is twice Dr. Vo's pecuniary gain from the offense. *See* 18 U.S.C. § 3571(d). Probation also recommends such a fine.

## D.     Restitution.

Restitution is mandatory for this offense. 18 U.S.C. §§ 3663A(a)(1). Moreover, Dr. Vo agreed in his plea agreement to make restitution for all relevant conduct, specifically including restitution outside of the offenses of conviction. The plea agreement in this case also provides that Dr. Vo shall receive credit against his forfeiture judgment for any amounts voluntarily paid in restitution.

The United States will submit separately a proposed restitution order. At this time, however, the government is still compiling information about potential victims who may have been affected by Dr. Vo's conduct. Accordingly, the United States requests that the Court set a separate restitution hearing to occur at least thirty (30) days after sentencing. *See* 18 U.S.C. § 3664(d)(5). The defense is in agreement to set a hearing to follow the sentencing. ECF 12 at 8.

# V.
# CONCLUSION

For the reasons stated above, the United States respectfully requests that this Court impose a sentence of three years of probation, including 100 hours of community service as a condition. The United States does not recommend a condition of home confinement or electronic monitoring.

The parties also jointly recommend forfeiture of $100,767.00 via a money judgment, a fine of $201,534.00, and restitution in an amount to be determined at a subsequent hearing.

DATED: October 18, 2023

Respectfully submitted,

TARA K MCGRATH
United States Attorney

*/s/ Nicholas W. Pilchak*
NICHOLAS W. PILCHAK
Assistant United States Attorney